IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


TIMOTHY P. DONOVAN, JR.,            :
                                   :
     Plaintiff,                    :
                                   :
vs.                                :     CIVIL ACTION 14-0353-WS-M
                                   :
CAROLYN W. COLVIN,                 :
Commissioner of Social Security,   :
                                   :
     Defendant.                    :


REPORT AND RECOMMENDATION


In this action under 42 U.S.C. § 405(g), Plaintiff seeks
judicial review of an adverse social security ruling which
denied a claim for disability insurance benefits (Docs. 1, 13).
The action was referred for report and recommendation pursuant
to 28 U.S.C. § 636(b)(1)(B).  Oral argument was heard on May 18,
2015 (Doc. 18).  After considering the administrative record,
the memoranda of the parties, and oral argument, it is
**RECOMMENDED** that the decision of the Commissioner be affirmed,
that this action be dismissed, and that judgment be entered in
favor of Defendant Michael J. Astrue and against Plaintiff
Timothy P. Donovan, Jr. on all claims.

This Court may not reweigh the evidence or substitute its

1

judgment for that of the Secretary of Health and Human Services,
*Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), a
decision that that be supported by substantial evidence.
*Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial
evidence requires "that the decision under review be supported
by evidence sufficient to justify a reasoning mind in accepting
it; it is more than a scintilla, but less than a preponderance."
*Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting*
*Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

The Plaintiff filed a protective application for disability
benefits on December 29, 2010, alleging his disability began on
June 1, 2006 and is due to arthritis, a bladder stone, and a
heart condition (Doc. 13; Tr. 8, 116-22).

After hearing testimony from Plaintiff and a Vocational
Expert, the Administrative Law Judge (ALJ) determined that
although Donovan could not perform his past work, there were
specific medium-exertion jobs that he could do (Tr. 8-18).
Plaintiff requested review of the hearing decision (Tr. 4) by
the Appeals Council, but it was denied (Tr. 1-3).

Plaintiff claims that the opinion of the ALJ is not
supported by substantial evidence.  Specifically, Donovan
alleges that:  (1) The ALJ did not properly consider his pain;

and (2) he can no longer work (Doc. 13).  Defendant has
responded to—and denies—these claims (Doc. 14).  The relevant
evidence of record follows.[1]

On October 24, 2006, Dr. Greer Megginson, Urologist, found
that Donovan had a large left inguinal hernia and a smaller one
on the right (Tr. 180).  Nine days later, an x-ray revealed a
bladder stone; Megginson recommended a cystoscope for the stone
and a surgeon for the hernias (Tr. 179).  Plaintiff resisted
both suggestions, but said that he would think about them.

On December 20, the IMC Northside Clinic refilled Donovan's
Inderal[2] prescription (Tr. 184).

On March 9, 2009, Plaintiff went to Saraland Family
Practice in search of a new doctor and an Inderal prescription
(Tr. 187).  A week later, he complained of headaches and flu-
like symptoms (*id.*).

On March 11, Dr. Hercules Panayiotou noted an abnormal
electrocardiogram, suggesting possible ischemia, renal
insufficiency, and hypertension (Tr. 295-97).  A follow-up

---

[1]Donovan asserts that his disability began on June 1, 2006, so
there is no need to review evidence that came significantly before
that date.  Likewise, the ALJ noted that December 31, 2010 (Tr. 8) was
the last day that Plaintiff was insured for disability benefits, so
there is no need to review evidence beyond that date.

[2]**Error! Main Document Only.***Inderal* is used to treat common
migraine headaches.  *Physician's Desk Reference* 3046-47 (52nd ed.
1998).

echocardiogram showed mild asymmetric septal left ventricular hypertrophy, consistent with coronary artery disease and diastolic dysfunction; also, there was mild dilation of the left atrium and inferior vena cava, aortic sclerosis with mild insufficiency, mild mitral, pulmonic, and tricuspid insufficiency, and mild pulmonary hypertension (Tr. 328). Further tests reported probable moderate-to-mild proximal left renal artery stenosis (Tr. 329-30); a treadmill stress test caused moderate dyspnea and increased hypertension, suggesting ischemia without chest pain (Tr. 292, 332).

On March 24, 2009, Dr. Randy Dotson noted that a chest x-ray showed pleural plaquing over the left hemidiaphragm; Plaintiff suggested it may be related to two years of working with asbestos (Tr. 271).

On April 14, Dr. Panayiotou summarized Donovan's examination results, noting his refusal to take several tests (a GXT cardiolite and chest CT); Plaintiff had also failed to begin newly-prescribed medication (Tr. 291-93).  Though the Doctor explained his proposed medical procedures and regimen, Donovan said he would think more about it.

On October 28, blood pressure medication was prescribed; the record shows recurrent refills for hypertension and

headaches over the next thirty months (Tr. 186, 195).

On December 30, a CT scan demonstrated a slightly enlarged bladder and a growing bladder stone, right kidney atrophy, a large, stable hernia on the left, and bladder diverticulum and diverticulosis (Tr. 221-22).

On March 23, 2010, Donovan went to the Springhill Medical Center ER for complaints of a possible esophageal obstruction with no chest pain; a chest x-ray was negative (Tr. 243-45). It was recommended that Plaintiff admit himself to the hospital for gastrointestinal evaluation, but he left against medical advice. On June 22, Donovan went back to the ER with complaints of gradually worsening shortness of breath with no chest pain; an x-ray showed possible early congestive heart failure but an EKG showed no acute changes (Tr. 233-42).

On December 30, Dr. Megginson noted Donovan's difficulties with a large hernia, large bladder stone, atrophic right kidney, and bladder diverticulum and diverticulosis but stated that Plaintiff had chosen not to do anything about them (Tr. 214).

At the evidentiary hearing, Donovan testified that he was sixty-seven years old, had graduated from high school, and had worked as a heavy equipment operator (Tr. 26-27). Donovan sought disability for two impairments: (1) a golf-ball-sized

bladder stone, irritated by the vibration of the equipment he operated, that caused urinary bleeding and incontinence; and (2) arthritis (Tr. 27-30, 40).  He had hypertension, and although Doctor Panayiotou recommended catheterization to discover the extent of his heart impairment, Donovan would not undergo the procedure (Tr. 30-31).  Plaintiff worked in the Alabama shipyard as a young man, pulling out asbestos, causing pleural disease; he never took medication for it, though (Tr. 31-32).  Donovan did take blood pressure medicine and bladder medicine for infection when he needed it (Tr. 32-33).  He lived alone; his children and grandchildren were responsible for household and outdoor chores (Tr. 33, 34).  Plaintiff could tend to his personal needs and could prepare a meal for himself (Tr. 33-34).  Responding to the ALJ, Donovan testified that he does "all [his] fishing and hunting at Walmart" (Tr. 35); he has a driver's license (Tr. 36).  Donovan spent his days talking with friends and relatives by phone; television did not interest him and he could not read because, although an eye specialist suggested he get reading glasses, he never did (Tr. 37).  The only pain medicine he had ever taken was Advil, although his arthritic pain, some days, registered ten on a ten-point pain scale (Tr. 38-39).

This concludes the Court's summary of the evidence.

Donovan first claims that the ALJ did not properly consider his pain; he specifically references arthritic knees, a bladder stone, and an impaired heart (Doc. 13).

The standard to evaluate Donovan's pain requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). The Eleventh Circuit Court of Appeals has also held that determining whether objective medical impairments could reasonably be expected to produce the pain was a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence." *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir.), *vacated for rehearing en banc*, 774 F.2d 428 (1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Furthermore, the Social Security regulations specifically state the following:

> statements about your pain or other symptoms
> will not alone establish that you are
> disabled; there must be medical signs and
> laboratory findings which show that you have
> a medical impairment(s) which could
> reasonably be expected to produce the pain
> or other symptoms alleged and which, when
> considered with all of the other evidence
> (including statements about the intensity
> and persistence of your pain or other
> symptoms which may reasonably be accepted as
> consistent with the medical signs and
> laboratory findings), would lead to a
> conclusion that you are disabled.

20 C.F.R. § 404.1529(a) (2014).

In her determination, the ALJ reviewed the medical evidence, systematically discussing the asserted impairments. The ALJ found that although Donovan experienced some pain, it was not as intense or limiting as suggested (Tr. 14). In reaching this decision, the ALJ noted Plaintiff's resistance to follow medical advice, his irregular treatment, and specifically referred to Donovan's leaving the ER against medical advice (Tr. 14). The ALJ noted that there was no arthritis diagnosis and no medical reports of Plaintiff's claims of pain (Tr. 15). The ALJ pointed to Donovan's refusal to undergo medical procedures to evaluate his heart impairment and his failure to take prescribed medications to treat it (Tr. 15).

The Court finds substantial support for the ALJ's decision.

The Court notes that Donovan takes no pain medications, except for Inderal for his headaches, as he is able to rely on over-the-counter medications.  Plaintiff has not demonstrated that he has a medical condition that could, conceivably, cause the pain asserted; likewise, there is no objective medical support for his assertions.

Donovan has also asserted that he can no longer work because of his impairments.  Plaintiff again cites his arthritic knees, bladder stone, and heart impairment (Doc. 13).

After reviewing the medical evidence, the ALJ found that Donovan had the residual functional capacity (hereinafter *RFC*):

> to perform less than a full range of medium work as defined in 20 C.F.R. § 404.1567(c).[3] The claimant is able to lift and carry 25 pounds frequently and 50 pounds occasionally and sit, stand and walk for a total of 6 hours each during an 8-hour workday.  He can frequently use the upper and lower extremities to push and pull, balance, stoop, kneel, crouch, crawl and climb ramps and stairs, and reach overhead.  He can continuously handle, finger and feel.  The claimant is precluded from exposure to extreme heat and cold, working around vibrations or pulmonary irritants, and

---

[3]**Error! Main Document Only.**"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work" (footnote not in original).

9

> working around unprotected heights or
> dangerous machinery.  He is able to perform
> simple routine tasks involving no more than
> simple, short instructions secondary to
> complaints of arthritic pain.

(Tr. 12).  In fashioning this RFC, the ALJ specifically

precluded Donovan from working around vibrations to accommodate

his bladder stone, working around unprotected heights or

dangerous machinery to accommodate hypertension, working around

extreme heat or cold to alleviate arthritis, and working while

exposed to pulmonary irritants (Tr. 14-16).  In summary, the ALJ

reached her RFC decision because of Plaintiff's conservative

medical treatment history, the lack of consistent complaints

from him in the medical records, and the lack of evidence

supporting arthritis (Tr. 16).

The ALJ went on to find that Donovan was able to work,

although not at his previous job as a heavy equipment operator

(Tr. 16).  Relying on the testimony of a Vocational Expert at

the evidentiary hearing (Tr. 41-45), the ALJ found that

Plaintiff was capable of performing the jobs of hand packager,

warehouse worker, and patient transporter (Tr. 17).

The Court finds substantial evidence to support the ALJ's

decision.  Though Plaintiff demonstrated to the ALJ that he

could not perform his past work, the ALJ accommodated his

specific physical complaints in finding different work that he could perform.  Donovan has not convinced this Court that the ALJ has committed any error in reaching that determination.

Plaintiff has raised two claims in bringing this action; both are without merit.  Upon consideration of the entire record, the Court finds "relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **RECOMMENDED** that the Secretary's decision be affirmed, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), that this action be dismissed, and that judgment be entered in favor of Defendant Carolyn W. Colvin and against Plaintiff Timothy P. Donovan, Jr.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); S.D. Ala. L.R. 72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or

11

recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 19th day of May, 2015.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE